**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MK HILLSIDE PARTNERS; M.A. KATZ, a partner other than the Tax Matters Partner,<br>*Petitioners-Appellants*,<br><br>v.<br><br>COMMISSIONER OF INTERNAL REVENUE,<br>*Respondent-Appellee*. | No. 14-71504<br><br>Tax Ct. No. 13171-08<br><br>OPINION |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted May 5, 2016
Pasadena, California

Filed June 23, 2016

Before: RAYMOND C. FISHER, MILAN D. SMITH, JR.,
and JACQUELINE H. NGUYEN, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Tax

In an action brought by a partner seeking judicial review of the IRS's adjustment of a partnership's tax return, the panel held that the tax court had jurisdiction to reject the partner's assertion of the statute of limitations, and affirmed.

Marcus Katz, a partner in MK Hillside Partners, filed a petition for review in tax court contesting the IRS's finding that MK Hillside was a sham, lacked economic substance, and was formed and used principally to avoid taxes; and asserting the statute of limitations. The tax court rejected the partner's assertion of the statute of limitations. The panel held that because the tax court had jurisdiction to consider Katz's argument regarding the statute of limitations, it necessarily had jurisdiction to reject it, at least for the purposes of the partnership proceeding. The panel affirmed the tax court's determination that the limitations period remained open as to Katz.

### COUNSEL

Charles E. Hodges, II (argued) and Antoinette L. Ellison, Kilpatrick Townsend & Stockton LLP, Atlanta, Georgia; Adam H. Charnes, Kilpatrick Townsend & Stockton LLP, Winston-Salem, North Carolina, for Petitioners-Appellants

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Joan I. Oppenheimer (argued) and Damon W. Taaffe, Attorneys, Tax Division; Tamara W. Ashford, Acting Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

## OPINION

M. SMITH, Circuit Judge:

In an action seeking judicial review of the IRS's adjustment of a partnership's tax return, the tax court has jurisdiction, pursuant to 26 U.S.C. § 6226(d)(1),[1] to "consider" an assertion by any of the partners that the applicable statute of limitations has expired for that particular partner. Here, a partner made such an assertion, and the tax court rejected it, holding that the limitations period remained open as to the partner. The partner seeks reversal, arguing that although the tax court had jurisdiction to accept his assertion, it lacked jurisdiction to reject it. We hold that the tax court had jurisdiction to reject the partner's assertion of the statute of limitations, and we affirm.

## FACTS AND PRIOR PROCEEDINGS

In 1998, Appellant Marcus Katz entered into two "collar" option contracts covering stock shares he owned.[2] Katz

---

[1] All further statutory references are likewise to Title 26 of the United States Code.

[2] A "collar" on stock shares consists of simultaneously purchasing a put option and selling a call option, both covering the same shares. The put option allows the option holder to sell shares at a set price, guaranteeing

terminated the collars in September of 1999, which generated a credit of $198,000. In October of 1999, Katz contributed stock to MK Hillside Partners (MK Hillside), a partnership between Katz and his wholly owned corporation, MK Hillside Investors, Inc. Katz also contributed real estate to the partnership. The partnership then sold the stock and real estate.

Katz's and MK Hillside's 1999 tax returns were received on September 25, 2000. Katz's return did not list the $198,000 credit from the collar termination, and MK Hillside's return reported no gain on the real estate sale. The IRS did not issue a notice of deficiency for Katz's 1999 taxes.[3] In July of 2006, Katz agreed to extend the time to assess his 1999 tax liability, including tax attributable to partnership items, until January 31, 2008. The IRS issued a Final Partnership Administrative Adjustment (FPAA) to MK Hillside on January 2, 2008, finding that MK Hillside was a sham, lacked economic substance, and was formed and used principally to avoid taxes.

---

a floor on the price received. Selling the call option produces income to cover the cost of the put option, but sets a ceiling on the price received for the shares. *See Levy v. Bessemer Trust Co.*, 97 Civ. 1785, 1997 U.S. Dist. LEXIS 11056, at *4 (S.D.N.Y. July 30, 1997).

[3] The IRS argues that there would have been no purpose in doing so because Katz "amended his 2000 tax return to reduce his claimed carryover losses flowing from his 1999 return, thereby effectively recognizing the unreported income."

Katz filed a petition in the tax court contesting that finding and asserting the statute of limitations.[4] The IRS responded that the Section 6501(e)(1) six-year statute of limitations applied because Katz's omission of the $198,000 on his 1999 return constituted more than 25% of the gross income reported on the return. Katz moved for summary judgment, arguing, *inter alia*, that he no longer had an interest in the partnership proceeding under Section 6226(d)(1), and, in the alternative, that the tax court lacked jurisdiction to consider at the partnership stage whether, due to a gross understatement of nonpartnership income, his 1999 tax year remained open at the time he agreed to extend his assessment period.

The tax court denied summary judgment, holding that a trial would be necessary to determine whether Katz in fact omitted substantial income from his 1999 return, in which case his personal limitations period would have been six years and would have remained open at the time Katz agreed to extend his limitations period. To avoid a trial, the parties

---

[4] Katz filed as "a partner other than the Tax Matters Partner," which is why this appeal is so captioned. In fact, Katz is the tax matters partner. The tax court noted that Katz did not explain why he filed the petition in his capacity as a partner other than the tax matters partner, and neither did he do so on appeal. It appears, however, that at the time of filing, Katz was statutorily barred from filing as the tax matters partner. Under § 6226(a), a tax matters partner may petition for readjustment of partnership items within 90 days after a notice of FPAA is mailed. Here, the notice of FPAA was mailed on January 2, 2008, so the window for a petition by the tax matters partner closed April 1, 2008. Katz filed on May 30, 2008, one day before the window for a partner other than the tax matters partner to petition for readjustment closed under § 6226(b). *See Barbados #6 Ltd. v. Comm'r.*, 85 T.C. 900, 904 (1985) (holding that a notice partner who was also the tax matters partner could file petition during the longer § 6226(b) window for notice partners).

agreed to a Stipulation of Facts and a Second Stipulation of Settled Issues. Based on those stipulations, the tax court held that the period for assessing tax on the 1999 MK Hillside partnership items was open as to Katz.

## STANDARD OF REVIEW

"Decisions of the tax court are reviewed on the same basis as decisions from civil bench trials in the district court. Thus, we review the tax court's conclusions of law de novo and its factual findings for clear error." *DHL Corp. & Subsidiaries v. Comm'r*, 285 F.3d 1210, 1216 (9th Cir. 2002) (citations omitted). Similarly, because we review a district court's application of the doctrine of judicial estoppel for abuse of discretion, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001), we likewise review the tax court's application of judicial estoppel to the facts of this case for abuse of discretion.

## ANALYSIS

### I.  Legal Standards

#### A.  Partnership Taxation

"A partnership does not pay federal income taxes; instead, its taxable income and losses pass through to the partners." *United States v. Woods*, 134 S.Ct. 557, 562 (2013) (citing § 701). Partnerships are required to file an informational tax return, and the partners are required to report their shares of the partnership's tax items on their individual tax returns. *Id*. (citing §§ 702, 704, 6031(a)). Before the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), the IRS disputed partnership tax matters through deficiency proceedings

concerning individual taxpayers. *Id*. This led to "duplicative proceedings and the potential for inconsistent treatment of partners in the same partnership." *Id*. at 563. TEFRA addressed these problems by establishing a two-stage process. *Id*. First, the IRS issues an FPAA notifying the partners of any adjustments to the partnership items, and the partners may seek judicial review of the FPAA. *Id*. (citing §§ 6223(a)(2), 6226(a)–(b)). Second, once the adjustments are final, the IRS may make the resulting "computational adjustments" to the individual partners' tax liability, usually without a deficiency proceeding, in which case the partners' only opportunity for further challenge is by way of post-payment refund action. *Id*. (citing §§ 6230(a)(1), (c); 6231(a)(6)).[5]

Generally, an individual's tax return remains open for three years after the return is filed. § 6501. For partnership items, the period for assessing tax expires no earlier than the later of three years after (1) the date the partnership return was filed, or (2) the last day for filing the partnership return. § 6229(a). The mailing of a notice of FPAA tolls the statute of limitations until one year after the adjustment becomes final. § 6229(d).

## B. A Partner's Ability to Assert a Personal Statute of Limitations in an FPAA Proceeding

Partners are treated as parties to a petition for readjustment of the FPAA if they have an interest in the

---

[5] Deficiency proceedings are required for certain computational adjustments attributable to "affected items," which are those affected by, but not themselves, partnership items. *Woods*, 134 S.Ct. at 563 (citing §§ 6230(a)(2)(A)(i), 6231(a)(5)).

outcome. § 6226(c)–(d). Such an interest exists if the items at issue remain partnership items for that partner and the period within which any tax attributable to the partnership may be assessed against that partner has not yet expired. § 6226(d). However, even if a partner no longer has an interest in the outcome, it has a limited right specifically to "participate in such action . . . solely for the purpose of asserting that the period of limitations for assessing any tax attributable to partnership items has expired with respect to such person, and the court having jurisdiction of such action shall have jurisdiction to consider such assertion." § 6226(d)(1) (flush language).

This language is the primary focus of the parties' dispute. Katz contends that "to consider" cannot mean "to determine," except perhaps if the determination is based on certain undisputed facts. The IRS contends that "to consider" an assertion that the statute of limitations has run necessarily requires either accepting or rejecting the assertion.

## C.  The Tax Court's Jurisdiction

"[T]he Tax Court, as an Article I court, is a court of limited jurisdiction and may only exercise jurisdiction to the extent authorized by Congress." *Adkison v. Comm'r*, 592 F.3d 1050, 1052 (9th Cir. 2010) (citing *Estate of Branson v. Comm'r*, 264 F.3d 904, 908 (9th Cir. 2001)). TEFRA provides that:

> A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year[,] . . . the proper allocation of such items

among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

26 U.S.C. 6226(f). "Whether the Tax Court has subject matter jurisdiction is a question of law and thus reviewed de novo." *Adkison*, 592 F.3d at 1052 (citing *Crawford v. Comm'r*, 266 F.3d 1120, 1123 (9th Cir. 2001)). "We are reluctant to read limitations on jurisdiction into a statutory scheme that does not clearly divest a court of jurisdiction." *Id*. at 1054–55.

## II. Because the Tax Court Had Jurisdiction to "Consider" Katz's Argument, it Necessarily Had Jurisdiction to Reject It, At Least for Purposes of the Partnership Proceeding

### A. Katz's Statutory Construction Argument Fails

"If the statutory language is unambiguous, its plain meaning controls unless Congress has 'clearly expressed' a contrary legislative intention." *Price v. Comm'r*, 887 F.2d 959, 963–64 (9th Cir. 1989) (quoting *United States v. 594,464 Pounds of Salmon*, 871 F.2d 824, 826 (9th Cir. 1989)). Conversely, if we find the statutory language indeterminate, we resolve the dispute "by looking to 'the structure of [TEFRA] and its other provisions.'" *Woods*, 134 S.Ct. at 563 (quoting *Maracich v. Spears*, 133 S.Ct. 2191, 2200 (2013) (alteration in *Woods*)).

Katz grounds his argument on the difference in word choice between statutory subsections. While Section 6226(f) grants "jurisdiction to *determine*" all partnership items, Section 6226(d)(1) grants "jurisdiction to *consider*" a

partner's assertion of its statute of limitations. Katz, citing *Porter v. Commissioner*, 130 T.C. 115, 118–19 (2008), argues that Congress used "determine" jurisdictionally in Sections 6015(e), 6214(a), 6404(h), 7436, and 7429(b)(3), and that courts have interpreted "determinations" in those sections to involve de novo findings. But the standard of review the tax court applies to "determinations" or "redeterminations" is not illuminating here, where the dispute does not concern the standard of review, but rather the scope of the tax court's jurisdiction.

Katz next argues that dictionary meanings apply, and cites the following definitions of "consider": to "think carefully about," to "think or deem to be; regard as," to "take into account; bear in mind." The American Heritage Dictionary of the English Language 392 (4th ed. 2000). Those definitions, listed first, second, and fourth, respectively, do not fit the context of the statute nearly as well as the third definition, which Katz neglected to mention: to "form an opinion about; judge." *Id.* As the government observes, it is unlikely that Congress enacted "§ 6226(d)(1) to enable a partner to raise an argument pertaining to timeliness about which the Tax Court may only ruminate."

Katz also raises a meritless argument based on a dictionary's usage example: "[h]e considered the cost before buying the new car." The Random House Dictionary of the English Language 312 (1967). Katz argues from this example that "[l]ike the fixed cost of a car, a court can consider established facts (the filing date of a return, etc.) but must *not* 'determine' if a tax return position is accurate for statute of limitations or deficiency procedures." Car salespersons might dispute the argument's premise that the cost of a car is "fixed." But even if the example given had involved

consideration of an immutable item, it would still be just that—a single nonlimiting example. It would not show that one can consider only "fixed" items.

The closest analogy Katz draws is to Sections 6214(b) and (c), both of which discuss considering facts for the purpose of redetermining a deficiency for one period without making a determination as to another period. Section 6214(b) provides:

> The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year or calendar quarter shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.

Section 6214(c) includes the same idea. While these sections limit the use of the "considered" information, they do not support Katz's argument. First, the considered information is actually used. Second, Section 6214 expressly limits the Tax Court's jurisdiction in a manner that Section 6226(d) does not. Moreover, Katz's reading does not make much sense in the context of Section 6226(d), which, to be useful to any taxpayer, requires the court to be able to *act* on a petitioner's assertion that the statute of limitations has run.

Indeed, Katz ultimately does not propose a "pure contemplation" interpretation. Instead, Katz argues that the

tax court should *dismiss* partners from the partnership case based on consideration of:

> any undisputed fact, including but not limited to: (1) whether a partner filed a personal return for the tax year in issue; (2) the date of the filing of the return; (3) whether the IRS is currently examining the partner for the tax year at issue in the partnership-level proceeding; (4) whether the IRS issued a notice of deficiency to the partner; and (5) whether the partner executed any extension of the applicable statute of limitations.

This "undisputed facts" interpretation follows from none of the bases Katz asserts: the plain language of the statute, dictionary meanings and examples, or analogy to Section 6214(b) and (c).

Katz's argument is also in tension with *Woods*, which held that "[p]rohibiting courts in partnership-level proceedings from considering the applicability of penalties that require partner-level inquiries would be inconsistent with the nature of the 'applicability' determination that TEFRA requires." 134 S.Ct. at 563–64. *Woods* also made clear that a partnership-level applicability determination is not the same as determining whether a partner will be required to pay a penalty, which must occur at the partner-level stage. *Id*. at 564.

While *Woods* did not involve Section 6226(d), "[w]e are 'bound not only by the holdings of [the Supreme Court's] decisions but also by their mode of analysis.'" *United States*

*v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (alteration in *Van Alstyne*)). By holding that a partnership proceeding is applicable to Katz because his limitations period is open, without purporting to determine whether Katz in fact must pay any penalty or adjustment, the Tax Court's decision is consistent with *Woods*'s mode of analysis. Consistent with *Woods*, the procedure followed here contemplates further partner-level proceedings.

### B.  Katz's Judicial Estoppel Argument Fails

Katz argues that the IRS is judicially estopped from arguing that omission of a nonpartnership item can extend the time to assess tax on partnership items due to a purportedly contrary position it took in oral argument in *Curr-Spec Partners, L.P. v. Commissioner*, 579 F.3d 391 (5th Cir. 2009). The tax court, citing *New Hampshire v. Maine*, 532 U.S. 742, 755–56 (2001), rejected this argument, "declin[ing] to apply the doctrine in this case based solely on the statement of an attorney made during oral argument in a different case."

Although "[a]dditional considerations may inform the doctrine's application in specific factual contexts," "several factors typically inform the decision whether to apply" judicial estoppel:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, . . . whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the

first or the second court was misled." . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*New Hampshire*, 532 U.S. at 750–51 (citations omitted).

Whether or not counsel's answer to a question at oral argument in *Curr-Spec* was inconsistent with the IRS's position here, the statutory construction the tax court adopted here is consistent with the decision in *Curr-Spec*, which held that "the Tax Court does not overreach its jurisdiction in partnership-level proceedings when, for limitations purposes, it considers whether a partner's individual tax return remains open to assessment." 579 F.3d at 401. *Curr-Spec* is thus not in conflict with the IRS's position or the Tax Court's holding here that "in a partnership-level proceeding we may consider the partner's period of limitations for the narrow purpose of determining whether the partnership-level action may proceed."

Katz points to language in *Curr-Spec* stating that "[a]s counsel for the Commissioner represented at oral argument . . . '[i]t's only to the extent that a partner's individual statute of limitations is still open that we could do an assessment.'" 579 F.3d at 398–99. This language does not address Katz's purported distinction between "considering" and "determining" a partner's assertion that the statute of limitations has expired. Accordingly, there is no perception that either the first or second court was misled on this issue. For the same reason, it is unclear what "unfair advantage" the

IRS would garner from any purported inconsistency between its positions in *Curr-Spec* and here.

*Curr-Spec* concluded that the practical result of its holding was that the IRS "may issue an FPAA *at any time*, subject only to the practical limitation that the FPAA may affect only those partners whose individual returns remain open." *Id*. at 399. That holding in no way conflicts with the IRS's position here.

We need not, and do not, reach the IRS's other arguments for affirmance.[6] Nor do we make any prediction regarding the preclusive effect of the tax court's holding in the partnership-level proceeding on any subsequent partner-level proceedings.[7]

---

[6] The IRS did not raise Article III's case or controversy requirement below, but does so here as an alternative ground for affirmance. The IRS's theory is that because an FPAA proceeding would be purely theoretical if no partnership returns remained open, the case or controversy requirement would not be satisfied for such a proceeding. The IRS also argues in a footnote that "[t]he omitted income ($198,000) may be a partnership item" because the determination of whether a partnership is a sham is a partnership item, and the facts relating to how the collar transactions were used to inflate the basis of stock that was contributed to the partnership "are underlying factual determinations as to the sham nature of the partnership and thus may be partnership items."

[7] The parties apparently agree that accepting the IRS's position means that "the doctrine of res judicata or collateral estoppel would apply in the [subsequent individual] deficiency proceeding," but we do not adopt this position as a holding. "Ordinarily both issue preclusion and claim preclusion are enforced by awaiting a second action in which they are pleaded and proved by the party asserting them. The first court does not get to dictate to other courts the preclusion consequences of its own judgment . . . ." 18 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4405 (2d ed. 2016) (citing *Smith v. Bayer*

**CONCLUSION**

The decision of the Tax Court is

**AFFIRMED.**

---

*Corp.*, 564 U.S. 299, 307 (2011) ("Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court . . . .")).