# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALEX MERUELO; LISET MERUELO,
    *Petitioners-Appellants,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
    *Respondent-Appellee.*

No. 11-70015

Tax Ct. No.
624-04

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
April 20, 2012—San Francisco, California

Filed August 16, 2012

Before: M. Margaret McKeown and N. Randy Smith,
Circuit Judges, and Roger T. Benitez, District Judge.*

Opinion by Judge N.R. Smith

*The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

9401

## COUNSEL

A. Lavar Taylor (argued) and Robert A. Horwitz, Law Offices of A. Lavar Taylor, Santa Ana, California, for the petitioners-appellants.

Richard Farber (argued) and Ellen Page DelSole, United States Department of Justice, Tax Division, Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General, United States Departments of Justice, Washington, D.C., for the respondent-appellee.

## OPINION

N.R. SMITH, Circuit Judge:

The Internal Revenue Service (IRS) validly issues a Notice of Deficiency ("NOD") to a partner in a partnership, when (1) no partnership-level proceeding is pending, (2) no notice of final partnership administrative adjustment ("FPAA") has been issued, and (3) the normal three-year statute of limitations in 26 U.S.C. § 6229(a)[1] has not expired. As such, we affirm the Tax Court's denial of Alex and Liset Meruelo's (husband and wife and hereinafter referred to as the Meruelos or the petitioners) motion to dismiss for lack of jurisdiction.

## I. BACKGROUND

### A. Facts

Mr. Meruelo was the sole member of Meruelo Capital Management, LLC ("MCM"). In 1999, MCM was a single-member limited liability company (LLC) and a disregarded entity[2] by default, because it did not file a Form 8832 (which allows an LLC to elect to be treated as a corporation for that year). As such, MCM did not (and was not required to) file a federal tax return for 1999. Instead, all of MCM's income and losses were to be reported on the Meruelos' joint tax returns. *See* Treas. Reg. § 301.7701-3(a), (b)(ii).

---

[1] All statutes cited herein refer to the Internal Revenue Code (the "Code"), which is codified in Title 26 of the United States Code, unless otherwise stated. Further, of all the statutes cited herein, only § 6229(c) has been amended from the version that was applicable at the time the returns at issue here were filed. Notwithstanding, the amendment to § 6229(c) is insignificant as it relates to the discussion in this opinion.

[2] The parties agree that MCM was a disregarded entity in 1999. "[A] 'disregarded entity' . . . is taxed as a sole proprietor for income tax purposes." *Single Member Limited Liability Companies*, IRS (June 12, 2012), http://www.irs.gov/businesses/small/article/0,,id=158625,00.html.

In 1999, MCM owned a 31.68 percent interest in Intervest Financial LLC ("Intervest"). Intervest had five members. The members were treated as partners for income tax purposes. Intervest was an entity subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), 26 U.S.C. § 6221-34.

On October 14, 2000, Intervest filed a Form 1065, U.S. Partnership Return of Income, for the 1999 tax year. The return listed MCM as a member, but it did not indicate that MCM was a single-member LLC, a disregarded entity, or that Mr. Meruelo (rather than MCM) was actually Intervest's member for 1999 for Federal tax purposes. The return reported a $14,327,160 ordinary loss from foreign currency transactions. Intervest issued MCM a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., for 1999 reporting an ordinary loss of $4,538,844 as a passthrough item from Intervest to MCM.

The Meruelos filed a joint tax return for 1999 on October 16, 2000. The return claimed the $4,538,844 loss as a pass-through item from MCM. The return did not identify Intervest or that Intervest was the source of the loss. The return indicated that MCM was a partnership. However, it did not indicate that MCM was a single-member LLC, a disregarded entity, or that Mr. Meruelo was actually Intervest's member in 1999 for federal tax purposes.

Before the expiration of the normal three-year period of limitations[3] on assessing federal income tax attributable to a part-

_____

[3]This three-year period was triggered on the date the Meruelos filed their return (October 16, 2000). *See* I.R.C. §§ 6229(a), 6501(a). In pertinent part, § 6229(a) states:

 [T]he period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—(1) the date

nership item (or an affected item),[4] *see* I.R.C. §§ 6229(a), 6501(a), the IRS attempted to secure an extension of the statute of limitations for the 1999 tax year from the Meruelos through the execution of a Form 872-I, entitled Consent to Extend Time to Assess Tax As Well As Tax Attributable to Items of a Partnership. By securing the extension, the IRS would have had additional time to investigate the circumstances behind the Meruelos' claimed loss and may have been able to avoid the problems at issue here. However, the Meruelos refused to grant the extension. Therefore, the IRS issued a NOD[5] to the Meruelos on October 10, 2003, a few days before the three-year statute of limitations expired. The NOD indicated that the Meruelos were not entitled to the $4,538,844 loss reported and owed a deficiency of $1,581,293 in federal income tax and $632,517.20 in penalties for the 1999 tax year.

---

on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions).

In addition, § 6501(a) states in pertinent part: "[T]he amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."

[4]"The term 'affected item' means any item to the extent such item is affected by a partnership item." I.R.C. § 6231(a)(5). A " 'partnership item' means . . . any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." *Id.* § 6231(a)(3).

[5]"A Notice of Deficiency consists of a letter stating the amount of the deficiency and the statement showing the computation of the deficiency." Internal Revenue Manual 8.17.4.1(3). "The running of the period of limitations is suspended when a notice of deficiency is mailed, and, if a proceeding with respect to the deficiency is brought before [the Tax] Court, the period of limitations remains suspended until the decision of [the Tax] Court becomes final and for 60 days thereafter." *Zarins v. Comm'r*, 81 T.C.M. (CCH) 1375 (2001) (citing I.R.C. §§ 6213(a), 6503(a)(1); Treas. Reg. § 301.6503(a)-1).

The IRS has never audited Intervest's 1999 return and has never notified Intervest that it will begin an audit. Further, the IRS has never issued a notice of FPAA[6] regarding Intervest's 1999 return.

## B.  Procedural History

On January 7, 2004, the Meruelos timely mailed their Tax Court petition challenging the deficiency contained in the NOD.  *See* I.R.C. § 6213(a). On October 1, 2004, the Meruelos moved to dismiss for lack of jurisdiction on the ground that the IRS issued the NOD prematurely, making it invalid. Specifically, the Meruelos argued that the NOD was premature, because it related to affected items and was issued before the issuance of any notice of FPAA and before the IRS had accepted as filed Intervest's 1999 tax return (i.e., no final resolution at the partnership level). Alternatively, the Meruelos argued that the items in the NOD were not affected items.

On November 12, 2004, the IRS moved to stay the proceedings in this case pending the resolution of a federal criminal investigation, the progress and outcome of which may have affected the disposition of this case. The IRS stated that it had just learned that the Meruelos' reported loss was generated by a tax shelter related to a grand jury investigation and that investigation could affect or be affected by the criminal case. Essentially, the IRS indicated that a partnership-level proceeding and adjustment may result (as allowed by the extended period of limitations under § 6229(c)) if fraud or other special circumstances were discovered in the criminal investigation.[7]

---

[6]The IRS must mail to each partner of a partnership a notice of FPAA when the IRS begins an "administrative proceeding at the partnership level with respect to a partnership item . . . ." I.R.C. § 6223(a).

[7]Because the Meruelos' argument depends on the language in the motion to stay, we include relevant portions of the motion to stay below:

The Tax Court granted the stay on November 18, 2004. The Tax Court ordered status reports every 120 days. The IRS's status reports noted that an indictment had been filed and that the individual indicted "was involved in the transactions at issue in this case, and said transactions are part of the criminal prosecution."

---

9. Specifically, if the responses to discovery, as well as any available non-grand jury information, or grand jury information released for use in this proceeding under Fed. R. Crim. P. 6(e), reveal that petitioner [sic] had, with the intent to evade tax, signed or participated, directly or indirectly, in the preparation of a partnership return which includes a false or fraudulent item, then in the case of partners so participating, any tax imposed by Subtitle A which is attributable to any partnership item (or affected item) for the partnership taxable year to which the return relates may be assessed at any time. I.R.C. § 6229(c)(1)(A).

10.  Furthermore, even if petitioners did not sign or participate directly in the filing of a false or fraudulent partnership return, the period for assessing tax attributable to partnership items related to a false or fraudulent partnership return is six years, rather than three years, from the date on which the partnership return was filed. I.R.C. § 6229(c)(1)(B). In the instant case, because Intervest's return was filed on October 14, 2000, the period of limitations for assessing tax attributable to partnership items would remain open for purposes of conducting a partnership level proceeding.

11.  In either case, the issuance of a notice of final partnership administrative adjustment ("FPAA") with respect to Intervest, under the circumstances described above, would have an impact on the Court's jurisdiction in the case currently before the court because the notice of deficiency would have to be dismissed in its entirety as a prematurely issued affected item notice of deficiency. *See GAF Corp. v. Commissioner*, 114 T.C. 519 (2000).

. . .

14.  It has long been respondent's policy to defer civil assessment and collection until the completion of criminal proceedings. Policy Statement P-1-84, IRM 1.2.1.4.25 (1991).

The Meruelos moved to lift the stay on May 17, 2007, and the IRS did not oppose. The Tax Court lifted the stay on July 3, 2007.

After the Tax Court lifted the stay, the IRS filed an objection to the Meruelos' motion to dismiss. Notably, the IRS conceded that "for purposes of the present deficiency proceeding, . . . partnership items must be accepted as reported on the partnership return . . . ." On June 9, 2009, the Tax Court denied the Meruelos' motion to dismiss in a published opinion. *Meruelo v. Comm'r*, 132 T.C. 355 (2009). The Tax Court held that the NOD was valid and not premature and that the items were affected items.[8] In deciding that the NOD was valid, the Tax Court reasoned as follows: First, "[t]he normal deficiency procedures apply to affected items," and a "valid NOD requires that any partnership-level proceeding involving the related partnership be complete." *Meruelo*, 132 T.C. at 363-64. Second,

> [w]hen the Commissioner [or IRS] opts not to begin a partnership-level proceeding or issue an FPAA within the normal period of limitations, the partnership-level proceeding is considered complete when the Commissioner accepts the partnership's return as filed. Whether the Commissioner has accepted a partnership return as filed is a question of fact that turns in part on a finding of whether the Commissioner opted to allow the normal period of limitations to expire without beginning a partnership-level proceeding.

*Id.* at 364 (citing *Roberts v. Comm'r*, 94 T.C. 853, 860-61 (1990)). Finally, the Tax Court disagreed with the Meruelos' argument that the NOD was invalid, based on the IRS defer-

---

[8]The Meruelos do not challenge the Tax Court's ruling that the proposed adjustments in the NOD were affected items.

ring any decision whether to audit Intervest's return until after the criminal proceedings. The Tax Court found:

> Where, as here, the Commissioner has opted not to commence within the normal period of limitations a partnership-level proceeding as to an entity subject to TEFRA, section 6225(a) serves as no restriction on the time within that period when the Commissioner may issue a[ ] NOD related to the partnership. It therefore was proper for respondent to have issued the NOD to petitioners just before the normal period of limitations was going to expire on petitioners' (and Intervest's) 1999 taxable years. Although respondent may have later considered during this proceeding the possibility of beginning a partnership-level proceeding as to Intervest on account of fraud or the like, any such consideration did not invalidate the NOD.

*Id.* at 365. Thus, because the IRS issued the NOD during the normal limitations period applicable to TEFRA entities and had accepted Intervest's return as filed, the NOD was valid and the Tax Court had jurisdiction. *Id.* at 366, 368. The Meruelos moved for reconsideration, which was denied on September 15, 2009.

On September 3, 2010, the parties reached an agreement as to all issues, including the amount of tax owed by the Meruelos, except the procedural and jurisdictional issues related to the TEFRA procedures and the validity of the NOD. On October 6, 2010, the Tax Court entered its final decision. It held that the Meruelos were liable for $1,387,006 in additional income tax and $277,401 in penalties. The Meruelos filed a timely appeal on December 21, 2010. Fed. R. App. P. 13(a); I.R.C. § 7483.

## II.  JURISDICTION AND STANDARD OF REVIEW

Pursuant to 26 U.S.C. § 7482(a)(1), we are authorized to review the decision of the Tax Court. "Whether the Tax Court

has subject matter jurisdiction is a question of law and thus reviewed de novo." *Adkison v. Comm'r*, 592 F.3d 1050, 1052 (9th Cir. 2010) "Conclusions of law, including the Tax Court's interpretation of the Internal Revenue Code, are reviewed de novo." *Id.* "Although we presume that the Tax Court correctly applied the law, we give no special deference to the Tax Court's decisions." *Best Life Assurance Co. of Cal. v. Comm'r*, 281 F.3d 828, 830 (9th Cir. 2002). Although we do not give the Tax Court special deference in a de novo review, "[b]ecause the Tax Court has special expertise in the field, . . . its opinions bearing on the Internal Revenue Code are entitled to respect." *Merkel v. Comm'r*, 192 F.3d 844, 847-48 (9th Cir. 1999) (internal quotation marks omitted). The Tax Court's factual findings are reviewed for clear error. *Keller v. Comm'r*, 568 F.3d 710, 716 (9th Cir. 2009). Under clear error review, we may reverse the Tax Court only if we have a "definite and firm conviction" that the tax court's factual finding was wrong. *Maciel v. Comm'r*, 489 F.3d 1018, 1027 (9th Cir. 2007) (quoting *Akland v. Comm'r*, 767 F.2d 618, 621 (9th Cir. 1985)). To have a definite and firm conviction that the Tax Court erred, we must find that the Tax Court's conclusion was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal quotation marks omitted).

We review the Tax Court's refusal to allow discovery for abuse of discretion. *River City Ranches #1 Ltd. v. Comm'r*, 401 F.3d 1136, 1139 (9th Cir. 2005).

## III.   DISCUSSION

The Meruelos argue that the Tax Court erred by finding the NOD valid and not premature. The Meruelos contend that the NOD was invalid, because the IRS had not accepted the Intervest return as filed as of the NOD issuance date. According to the Meruelos, the IRS was still considering partnership-

level proceedings as evidenced by (1) its statements in the motion to stay and the status reports; (2) its policy of deferring civil assessment until the completion of criminal proceedings; and (3) its failure to claim that there had been a "final outcome" in November 2007 (after the expiration of the extended six year limitations period in § 6229(c)). Furthermore, while the IRS held exclusive control of the evidence of its intentions, it never presented any evidence, thereby creating an adverse inference that such evidence would support the Meruelos. Based on this information, the Meruelos argue that the Tax Court erred by relying only on the IRS's failure to commence an audit of Intervest's return, not issuing a notice of FPAA, and issuing the NOD before the normal three-year TEFRA audit statute of limitations. Further, the Meruelos assert that the record only logically supports a factual conclusion that the IRS had not accepted as filed the 1999 Intervest return as of the NOD date.

We disagree with the Meruelos based on (1) binding Ninth Circuit case law only invalidating a NOD when partnership-level proceedings are pending, (2) persuasive Tax Court case law indicating that a NOD is valid when no partnership-level proceeding is pending and the normal limitations period has expired, and (3) the Code, which provides no applicable limitations on the issuance of a NOD in these circumstances.

The Tax Court had jurisdiction, because the lack of any pending partnership-level proceeding and the expiration of the normal limitation period makes a NOD valid as a matter of law. The Tax Court is a court of limited jurisdiction. *Adkison*, 592 F.3d at 1052. It "may only exercise jurisdiction to the extent authorized by Congress." *Id.*; *accord* I.R.C. § 7442. "Pursuant to section 6213(a), [the Tax] Court's jurisdiction to redetermine a deficiency in tax depends upon a valid notice of deficiency and a timely filed petition." *GAF Corp. & Subsidiaries v. Comm'r*, 114 T.C. 519, 521 (2000) (footnote omitted); *accord Napoliello v. Comm'r*, 655 F.3d 1060, 1063 (9th Cir. 2011) ("The IRS ordinarily may assess, and then collect

on, a tax deficiency only after issuing a deficiency notice to the taxpayer." (citing I.R.C. § 6213(a))). Section 6212(a) allows the IRS to send a NOD to a taxpayer if the IRS determines that there is a deficiency in the taxpayer's income tax. *GAF Corp.*, 114 T.C. at 521. Section 6213(a) allows the taxpayer receiving the NOD, "[w]ithin 90 days . . . after the notice of deficiency authorized in section 6212 is mailed" to "file a petition with the Tax Court for a redetermination of the deficiency." After petitioning the Tax Court for a redetermination, "[i]f the taxpayer contests the validity of the notice in Tax Court, . . . the challenge acts as a challenge to the court's jurisdiction." *Napoliello*, 655 F.3d at 1063.

**[1]** However, in the partnership context, a NOD (relating to an affected item) is invalid if a partnership-level proceeding is pending. *See Adkison*, 592 F.3d at 1053, 1056. TEFRA "establishes the process for assessing tax deficiencies against partners, including the issuance of a valid deficiency notice."[9] *Napoliello*, 655 F.3d at 1063 (citing I.R.C. §§ 6221-34). "TEFRA applies to all partnership items . . . and any item that is 'affected by a partnership item.' "[10] *Adkison*, 592 F.3d at 1053.

---

[9] "[P]artnerships are not taxable entities; they pay no federal income taxes and file only informational returns." *Cent. Valley AG Enters. v. United States*, 531 F.3d 750, 755 (9th Cir. 2008) (citing I.R.C. §§ 701, 6031). "Instead, the individual partners are separately or individually liable for income taxes on their distributive share of partnership items." *Id.* As such, prior to the enactment of TEFRA, "adjustments of partnership items were determined at the individual partners' level, resulting in duplication of administrative and judicial resources and inconsistent results between partners." *Id.* at 755-56 (internal quotation marks omitted). "TEFRA did not change the taxation of partners and partnerships; rather, it changed only the procedures for determining the appropriate tax treatment of partnership items." *Id.* at 756.

[10] Here, TEFRA applies. The IRS issued a NOD to the Meruelos. *Meruelo*, 132 T.C. at 359. The Meruelos petitioned the Tax Court for a redetermination and then filed a motion to dismiss challenging the Tax Court's jurisdiction. *Id.* at 357. The Tax Court determined that the items in the NOD were affected items that required determination at the partner level. *Id.* at 366-67. The Meruelos do not challenge this finding; thus, TEFRA applies. *See Adkison*, 592 F.3d at 1053.

> In general, a partnership proceeding must be com-
> pleted and a valid notice of deficiency sent before
> the Tax Court may examine the individual tax treat-
> ment of an affected item. Because the tax treatment
> of affected items depends on partnership level deter-
> minations, affected items cannot be tried as part of
> a partner's personal tax case until the completion of
> the partnership level proceeding.

*Id.* (internal quotation marks and alterations omitted) (quoting *N.C.F. Energy Partners v. Comm'r*, 89 T.C. 741, 743-44 (1987)); *see also id.* at 1056 ("TEFRA plainly contemplates that when a partnership proceeding is pending, the [IRS] will not assert a deficiency against a taxpayer-partner until the partnership proceeding determines the liability of the partner-ship, and consequently, the partners." (citing I.R.C. §§ 6221, 6225(a)(1))). Thus, if a partnership proceeding is pending, then a NOD cannot be validly issued.

**[2]** However, if no partnership proceeding is pending, then a NOD may be validly issued. In *Roberts v. Commissioner*, the Tax Court held that "the 'outcome of the partnership pro-ceeding' may be acceptance of the partnership return as filed as a result of the fact that there was no partnership proceeding and there can no longer be a partnership proceeding under the normal statute of limitations." 94 T.C. at 860. In *Roberts*, the NOD was issued six days before the normal statute of limita-tions in § 6229(a) expired, no partnership proceedings were commenced, and no notice of FPAA was issued. *Id.* at 854, 857. "Consequently, the tax treatment of all partnership items with respect to these partnerships is final in accordance with the tax returns filed by these partnerships." *Id.* at 857. *Roberts* did not read § 6225(a)'s restriction that assessment must wait until 150 days after a mailed FPAA or the final decision of a Tax Court proceeding to limit the issuance of a NOD. *See id.* at 859-60. Further, *Roberts* did "not read section 6230(a)(2)(A)(i) to mean that a partnership proceeding must be opened and closed in order for there to be a determination

with regard to an affected item." *Id.* at 860. *Roberts* concluded that "affected items may be adjudicated in a deficiency proceeding despite the absence of an FPAA after the running of the normal statute of limitations period for the partnership." *See id.* at 859.

Subsequently, in *Gustin v. Commissioner*, the Tax Court reaffirmed *Roberts* by finding a NOD valid (and jurisdiction proper) when the IRS had not commenced partnership proceedings; an FPAA was not issued; the three-year limitations period in § 6229(a) had expired; and the NOD was issued forty-five days before the limitation period expired. 83 T.C.M. (CCH) 1341 (2002). In *Gustin*, the IRS acknowledged that it could not make partnership item adjustments, acknowledged that a notice of FPAA would not be issued, and accepted the return as final. *Id.* at *5-6. Further, the Tax Court found the partnership return final and binding on the parties. *Id.* at *6.

Applying this law in our case, the Tax Court stated that the IRS

> could not have issued the NOD to petitioners before the completion of any partnership-level proceeding involving Intervest in that respondent never started any such proceeding in the first place. . . . It therefore was proper for respondent to have issued the NOD to petitioners just before the normal period of limitations was going to expire on petitioners' (and Intervest's) 1999 taxable years. Although respondent may have later considered during this proceeding the possibility of beginning a partnership-level proceeding as to Intervest on account of fraud or the like, any such consideration did not invalidate the NOD.

*Meruelo*, 132 T.C. at 365. We agree with the Tax Court's reasoning in *Roberts* and *Gustin* and the application of that reasoning by the Tax Court to this case.

**[3]** The IRS appropriately issued the NOD in this case based on applicable sections of the Code and case law. Section 6230(a)(2) makes the deficiency procedures described in §§ 6212 and 6213 applicable to affected items. Neither § 6212 nor § 6213 require the issuance of a NOD to await a "final acceptance" of a partnership return. These sections only require that a NOD be mailed when the IRS determines that there is a deficiency and before assessment of the deficiency. Further, although a valid NOD must await the completion of partnership proceedings when a partnership item or affected item is involved, *Adkison*, 592 F.3d at 1053, 1056, TEFRA does not limit the issuance of a NOD when no partnership proceeding is pending and no notice of FPAA has been sent, *see* I.R.C. § 6225(a). Section 6225(a) states that "no assessment of a deficiency attributable to any partnership item may be made . . . before" 150 days after the date a notice of FPAA is mailed or a proceeding in Tax Court has been finalized. Assessment of a deficiency is not equivalent to providing notice of a deficiency. *See Bromberg v. Ingling*, 300 F.2d 859, 861 (9th Cir. 1962) (holding that a NOD must be issued and the 90-day time period to file a petition with the Tax Court must expire before the IRS may assess the deficiency). No provision of the Code limits the IRS from issuing a NOD and pursuing a tax deficiency regarding an affected item at the partner-level when no partnership-level proceeding has been commenced. Therefore, the NOD issued to the Meruelos was valid as a matter of law, and the Tax Court had jurisdiction.

While the circumstances here are slightly different from those in *Roberts* and *Gustin*, the outcome does not change. In *Roberts* and *Gustin* there was no evidence indicating that the IRS might have decided to commence partnership-level proceedings subsequent to the issuance of the NOD. The Meruelos argue that there is "relevant and conclusive" evidence of such indecision here. Thus, the NOD was (and any NOD would be) premature and invalid, because the IRS was considering potential partnership-level proceedings.

**[4]** However, the evidence here is unique, because the IRS's indecision depended on a criminal investigation that may have found fraud, therefore triggering an exception to the normal limitations period. *See* I.R.C. § 6229(a), (c). Section 6229 contemplates assessment of affected items after the normal three-year limitations period if fraud or a substantial omission of gross income (among other things) are discovered. I.R.C. § 6229(c). "[T]he Commissioner [or IRS] may issue an FPAA *at any time*, subject only to the practical limitation that the FPAA may affect only those partners whose individual returns remain open under IRC § 6501(a) or some extension thereto, such as" those found in § 6229. *Curr-Spec Partners, L.P. v. Comm'r*, 579 F.3d 391, 399 (5th Cir. 2009); *see also Bakersfield Energy Partners, LP v. Comm'r*, 568 F.3d 767, 770 (9th Cir. 2009) (recognizing that a notice of FPAA may be filed after the normal three-year limitations period and an assessment may be made if an exception in § 6229(c) applies). Congress expected instances where the IRS would obtain additional information that would warrant adjustment after the normal limitations period. Thus, because of the exceptions to the normal limitations period in § 6229(c) and the absence of any restriction in § 6225(a) to issuing a NOD before a partnership proceeding is commenced, the IRS's contemplation of initiating future partnership-level proceedings is irrelevant.

Requiring the IRS to represent or prove that it had no interest in seeking future partnership-level adjustments or requiring the Tax Court to find such a fact serves no purpose, because the IRS has statutory rights to seek future partnership-level adjustments at anytime and to seek partner assessments in narrow circumstances. *See* I.R.C. § 6229(c). In other words, it makes little sense to require the IRS to prove that it is not considering partnership-level proceedings in order to issue a valid NOD, while still recognizing that the IRS has statutory authority to assess tax related to affected items when, for example, fraud is discovered. If a NOD were invalid, because the IRS contemplated future partnership-

level proceedings (even relating to the exceptions in § 6229(c)) when the NOD was issued, then the IRS may be barred by the normal three-year limitation period even when the Code allows adjustments after the normal three-year limitations period in some circumstances. Such a result would be illogical.

For example, here the NOD would be invalid, if it is assumed that NODs issued while the IRS is contemplating future partnership-level adjustments are invalid, because the IRS issued the NOD while anticipating the possibility of pursuing future partnership-level proceedings if fraud was discovered in the related criminal proceeding. Under these assumed circumstances, the IRS would be barred from assessing the Meruelos the $1,387,006 in additional income tax and $277,401 in penalties that they stipulated to owing because the normal limitations period expired. The result ignores the fact that the normal limitations period expired with no partnership audit having been commenced or announced. The IRS should be able to acknowledge that items in the partnership return are generally considered final at the end of the three-year limitations period, while still anticipating future adjustments based on the special, narrow exceptions to the normal three-year limitations period.

The Meruelos also argue that the Tax Court's extension of *Roberts* is absurd, because a NOD will be deemed valid and affected item litigation may commence, regardless of the IRS intending to commence partnership-level proceedings under the extended statute of limitations in § 6229(c). They argue that this contradicts the purpose of TEFRA to have a single partnership proceeding until all partnership level issues are resolved. We disagree, because Congress already contemplated the potential for additional partnership proceedings after the normal statute of limitations period and assessment against certain partners if those partners' returns are open under the normal or potentially applicable extended limitations period (usually because of discovered fraud or substan-

tial omissions from gross income). *See Curr-Spec Partners*, 579 F.3d at 399. TEFRA's purpose of having a single partnership proceeding is not disrupted, because there will still be a single partnership-level proceeding for Intervest. Although multiple proceedings may result for individual partners, the Code "explicitly contemplate[s] distinct treatment of different partners." *Id.*

**[5]** Lastly, even if we were to hold that the NOD must have been "accepted as filed," and such a determination is a factual inquiry, the Meruelos' argument still fails. The Tax Court did not clearly err in determining that the IRS accepted the Intervest return as filed. *See Keller*, 568 F.3d at 716. The Tax Court relied on the IRS opting not to begin partnership-level proceedings and not issuing a notice of FPAA within the normal statute of limitations period. Although the IRS indicated there was a possibility for future partnership-level proceedings if fraud was discovered, that fact does not invalidate the conclusion that the IRS accepted Intervest's return as filed on the date the NOD was issued. The IRS stated in the motion to stay that it had just learned that the loss reported by the Meruelos was related to the criminal investigation. *Meruelo*, 132 T.C. at 361. Further, the Meruelos tax return only listed MCM and did not mention Intervest, and the NOD only referenced reasons related to MCM for disallowing the loss. *Id.* at 359-60. Thus, the factual determination that the IRS accepted the return as filed is not "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *See Hinkson*, 585 F.3d at 1262 (internal quotation marks omitted).

## IV.   CONCLUSION

**[6]** The IRS issued the NOD when (1) there was no pending partnership-level proceeding, (2) no notice of FPAA had been issued, and (3) the normal three-year statute of limitations in § 6229(a) expired a few days later. No case or provision of the Code limits the issuance of a NOD in these

circumstances. In contrast, the Code requires the issuance of a NOD in order to assess tax to a partner regarding affected items. I.R.C. §§ 6212, 6213, 6230(a)(2)(A). As such, we hold that a NOD issued when no partnership-level proceeding or FPAA have been issued is valid. *See Roberts*, 94 T.C. at 860. Therefore, the Tax Court had jurisdiction, and its decision is AFFIRMED.